■ In the Matter of THE PEOPLE OF THE STATE OF NEW YORK, by ELIOT SPITZER, as Attorney General of the State of New York, Respondent, v JAG NY, LLC, Doing Business as N.Y. CATALOG SALES, et al., Appellants. [794 NYS2d 488]—

Crew III, J.P. Appeal from an order of the Supreme Court (Malone, Jr., J.), entered January 21, 2005 in Albany County, which, inter alia, granted petitioner's application, in a proceeding pursuant to Executive Law § 63 (12), to enjoin respondents from making usurious short-term loans.

In or about October 2001, respondent JAG NY, LLC began operating catalog sales stores in the City of Watertown, Jefferson County, and in the Town of Queensbury, Warren County. "Qualified customers"* who purchased merchandise or gift certificates were permitted to write checks for amounts in excess of the cost of their purchases in exchange for immediate cash with JAG's assurance that such checks would not be negotiated until the customers' next payday, at which time the checks either would be deposited in JAG's bank or be redeemed by the customers in cash. JAG's customers could obtain a cash advance up to $500 by purchasing a catalog gift certificate and drafting a check in excess of the cost of the gift certificate. A customer was required to purchase a $15 gift certificate for every $50 they wished to receive. There was no limit on the number of pay periods for which a customer could write a check over the amount of purchase and, in fact, customers routinely wrote a new check on the same day they paid off the previous check. While customers were not permitted to utilize the moneys obtained from their new checks to satisfy their prior indebtedness, they were encouraged to borrow money from friends or relatives for that purpose and repay them the same day after receiving cash in exchange for the writing of the new checks.

In August 2004, petitioner commenced this special proceeding, pursuant to Executive Law § 63 (12) and CPLR article 4, seeking injunctive relief, restitution and damages, as well as penalties and costs, on the ground that respondents were engaged in a scheme to make usurious payday loans disguised as sales of gift certificates for catalog merchandise. Following respondents' answer and various discovery, Supreme Court found respondents in violation of General Obligations Law § 5-501, Banking Law § 340, General Business Law § 601 and Exec-

---

* To qualify, customers had to be employed, have an open checking account and complete a customer application form requiring a Social Security number, bank account information and personal and professional references. Additionally, customers were required to have a minimum gross biweekly income of $300.

utive Law § 63 (12) and, inter alia, issued a permanent injunction prohibiting respondents from engaging in their illegal and fraudulent business activities. Respondents now appeal.

In Supreme Court, respondents adamantly contended that the transactions in question were not loans and that JAG was simply a catalog business entity that made money off the profit generated by the sales of merchandise in their catalogs. Recognizing that it is common practice for those engaged in usury to disguise the true nature of their transactions, Supreme Court rejected the form respondents sought to give their transactions and found that they were nothing more than payday loans. While not dispositive of the issues before us, it is of note that in this Court, respondents do not dispute that the transactions at issue indeed were loans. Left for our resolution is whether the loans at issue were usurious. We think they were.

Petitioner presented evidence demonstrating that many of JAG's customers fell into a cycle of debt in which they were constantly buying back their checks—in essence, writing a new check to pay off their previous check every payday. While this process was ongoing, customers were accumulating gift certificates that they considered valueless and/or of little or no use to them. The evidence also reflected that some customers who redeemed their certificates were charged cash for shipping, handling and taxes, did not receive the merchandise and received no refunds. Moreover, the evidence revealed that most of JAG's customers purchased gift certificates for the sole purpose of obtaining a loan. Three former JAG employees averred in affidavits that most of JAG's customers were only interested in obtaining money and did not use their gift certificates. Petitioner also presented respondents' business records for a 28-week period between May 2002 and October 2002, which demonstrated that during that time, few gift certificates were redeemed.

In opposition, respondents presented evidence that 75% of their repeat customers used their gift certificates during a nine-month period. However, we note that those statistics do not reveal to what extent those customers redeemed the total value of their gift certificates and, more importantly, respondents have not presented evidence revealing the percentage and total value of all gift certificates redeemed from all borrowers. Finally, respondents submitted affidavits from four "satisfied customers." However, it is worth noting that not one of those customers averred that they engaged in their transactions for the sole purpose of purchasing merchandise and not for the purpose of borrowing money. In short, we are of the view that respondents

have not laid bare their proof, and the evidence they have submitted does not raise a legitimate issue of fact necessitating an evidentiary hearing. The record makes plain, as found by Supreme Court, that the sale of the gift certificates constituted disguised interest far in excess of that permitted by law.

We reach a different conclusion with regard to respondents' alleged unlawful collection practices. Petitioner's proof in this regard rests primarily on the affidavit of a former JAG employee, Kylie Seery. Suffice to say that Seery's averments are flatly contradicted by the manager of the JAG store in which she worked, as well as the manager of another JAG store and JAG's regional manager. Accordingly, a hearing is necessary to make a credibility determination regarding this conflicting evidence. We have considered respondents' remaining contentions and find them unavailing.

Carpinello, Mugglin, Lahtinen and Kane, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as found that respondents violated General Business Law article 29-H; matter remitted to the Supreme Court for a hearing on that issue; and, as so modified, affirmed.